**SIGNED THIS: March 24, 2021**

_____
**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 19-70782 |
| BRETT M. KOSS, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

## O P I N I O N

Before the Court, after trial, is an amended motion for sanctions filed by

the Debtor against Marketview Motors-Bloomington, Inc. d/b/a JD Byrider,

Marketview Finance Corporation d/b/a CNAC, and Byrider Corporate. For the

reasons set forth herein, both Marketview Motors-Bloomington, Inc. d/b/a JD

Byrider and Marketview Finance Corporation d/b/a CNAC will be found to

have willfully violated the automatic stay and will be sanctioned.

## I.    Factual and Procedural Background

Brett M. Koss ("Debtor") filed his voluntary petition under Chapter 13 on May 24, 2019. Relevant to the issues here, he scheduled an unsecured debt to an entity he identified as "Cnac-Il105" in the amount of $10,468. He listed the creditor as having an address at a post office box in Champaign, Illinois, and notice of the bankruptcy filing was sent to the creditor at that address.

On July 29, 2019, Marketview Motors-Bloomington, Inc., ("Marketview Motors") filed an unsecured claim in the amount of $10,468.89, asserting that the basis for its claim was a judgment it had obtained against the Debtor on February 13, 2019, in McLean County, Illinois.[1] The claim also stated that Marketview Motors did business using the names JD Byrider and CNAC. The claim was signed and filed by Attorney Donald Parkinson. Marketview Motors made no objection to any of the Debtor's several Chapter 13 plans, and the Debtor's Second Amended Plan was confirmed on September 6, 2019.

In June 2020, the Debtor filed a motion seeking to have CNAC held in contempt and sanctioned for violations of the automatic stay. The motion claimed that, despite having received notice of the bankruptcy filing, CNAC had filed a petition for rule to show cause in the McLean County case on July 22, 2019, seeking to enforce its judgment against the Debtor. Further, the motion complained that the Debtor had received a notice dated April 9, 2020, stating that, if the Debtor did not appear for a state court hearing, a warrant for his arrest would issue. The motion also claimed that CNAC was improperly and

---

[1] The case was captioned "Marketview Motors-Bloomington d/b/a JD Byrider and Marketview Finance Corporation d/b/a CNAC, Plaintiff v. Brett M. Koss, Defendant, No. 2019 AR 000007."

incorrectly reporting information about the Debtor to credit reporting agencies. The motion said that repeated emails had been sent to Attorney Parkinson, but Attorney Parkinson had declined to take any action to resolve the issues on behalf of his clients. Both the motion and a notice of hearing were served on CNAC's registered agent.

At the hearing on the motion seeking to have CNAC held in contempt and sanctioned, only the attorney for the Debtor, Joe Pioletti, appeared. CNAC filed no written response to the motion, and no attorney appeared on its behalf.

Attorney Pioletti explained that, before filing the motion seeking sanctions, he had spent over a year trying to get CNAC to respect the automatic stay. He pointed out that attached to the motion were copies of the petition for rule to show cause signed and filed by Attorney Parkinson after the bankruptcy was filed and the notice issued April 9, 2020, threatening the Debtor with arrest if he failed to appear before the state court in the case being prosecuted by CNAC. He said that the Debtor was "freaking out" with concern about being arrested. He also said that, with respect to the improper credit reporting, he had been assured—apparently by Attorney Parkinson—that the matter would be fixed but that it had not been fixed. CNAC continued to report the Debtor as missing payments each month despite the provisions of the confirmed Chapter 13 plan. CNAC had told him—again, apparently through Attorney Parkinson—that instead of putting the account on an automatic hold for credit reporting purposes, it was monitoring the account each month and manually pushing back the due date each month. Despite those

representations, however, CNAC repeatedly failed to do what it said it was going to do and continued to report monthly delinquencies.

In the absence of any appearance or objection by CNAC, an order was entered finding that CNAC's conduct in continuing to prosecute collection of the McLean County judgment and in inaccurately reporting credit information violated the automatic stay. CNAC was ordered to remedy both violations and provide proof of the remedies to Attorney Pioletti within thirty days. Further hearing was set to determine compliance with the order and to assess monetary sanctions. A copy of the order was mailed to CNAC's registered agent the day after it was entered.

As set forth in the order, a telephonic status on the motion seeking sanctions was subsequently held to determine compliance with the order. No one appeared for CNAC. The Debtor appeared by one of Attorney Pioletti's associates who reported that no action had been taken in the McLean County case; the matter was still pending with the Debtor still subject to potential arrest for his failure to appear. With respect to the credit reporting issue, the Debtor had checked his credit report and discovered that CNAC had initiated some corrections to the report, but no communication had been received by Attorney Pioletti regarding the corrections as required by the prior order. The Debtor's attorney requested that further sanctions issue due to CNAC's failure to comply with the prior order. Monetary sanctions in the amount of $2500 plus $1000 in attorney fees were requested.

Finding that CNAC had not complied with the prior order, a further sanctions order was entered. The new order awarded $1000 in sanctions to be paid to the Debtor and $750 in fees to be paid to the Debtor's attorney. The sanctions and attorney fees were to be paid within fourteen days, and a further hearing was set to determine if CNAC had complied with the order. A copy of the new order was mailed to CNAC's registered agent on the day it was entered.

Shortly after the entry of the second sanctions order, Attorney Parkinson filed a document labeled as a Statement to the Court ("Statement") on behalf of Marketview Motors and Marketview Finance Corporation d/b/a CNAC ("Marketview Finance"). In the Statement, Attorney Parkinson said that, although neither Marketview Motors nor Marketview Finance were parties to the pending motion for sanctions, he believed clarifications from them were needed. He asserted that both Marketview Motors and Marketview Finance were simply franchise holders who used software provided by an unnamed corporate entity to report credit information through the corporate office to credit reporting agencies. He said that "CNAC/J D BYRIDER"—an entity not previously mentioned by either party—is in Indiana and complained that the Debtor's attorney served Bob Brady—again, a person not previously named anywhere—who has nothing to do with the transactions at issue. As to the actual credit reporting problem, he provided no explanation or defense.

With respect to the McLean County case, Attorney Parkinson said that an unnamed McLean County judge had determined that the Defendant—the Debtor—would likely not complete his bankruptcy and therefore refused to

remove the case from his docket and was requiring that either the Debtor or his attorney periodically appear for a status. Attorney Parkinson claimed that it would be improper for him to appear and provide a status on the case. He suggested that he had told the Debtor's attorney that he should appear in the McLean County case or send the Debtor in to do so. Attorney Parkinson said that the notice that contained the threat of arrest of the Debtor was issued by the state court and not by him personally. He acknowledged that his clients did not want to dismiss the state court collection proceedings because the matter could end up back under state court jurisdiction if the bankruptcy was dismissed.

Attorney Parkinson, in the Statement, asked: "Who is CNAC?" He said that Attorney Pioletti had failed to answer that question and thereby misled the Court. Nevertheless, he said that he had a check in the amount of $1750 ready to tender to the Debtor's attorney. All that would be required for the check to be delivered, according to Attorney Parkinson, would be for the Debtor to report to this Court that Attorney Parkinson's clients had fully complied with all prior court orders.

One day before the next scheduled status, Attorney Parkinson filed a Further Statement to the Court ("Further Statement"). In his Further Statement, he repeated the assertions from the Statement that neither Marketview Motors nor Marketview Finance were parties to the pending sanctions motion and that both were simply franchise holders using an unnamed corporate entity's software to report to credit reporting agencies. He

complained that Attorney Pioletti had not responded to his offer to pay the $1750 in previously ordered sanctions in exchange for a representation to this Court of full compliance with prior orders.

Further hearing on the motion for sanctions and to determine compliance with prior orders was held on September 15, 2020, as scheduled. The Debtor appeared by his attorney. Attorney Parkinson did not appear; no one appeared for CNAC.

Attorney Pioletti reported again that no action had been taken in the McLean County case to remedy the problems there, and, although the Debtor had determined that corrected information was now appearing on his credit report, he had not had any affirmative contact from CNAC about ongoing reporting. Further, the monetary sanctions and attorney fees ordered to be paid by the prior order had not been paid.

With respect to the Statement and Further Statement filed by Attorney Parkinson, Attorney Pioletti said that he had made an effort to determine the correct party to name and serve in his sanctions motion. He said that the Debtor had dealt with CNAC and that the inaccurate credit reporting was made in the name of CNAC. He said that he had checked the online records of the Illinois Secretary of State and had served the person shown in those records as the registered agent of CNAC. Attorney Pioletti pointed out that Attorney Parkinson had attached to his Statement a series of emails wherein Mr. Pioletti had asked for information necessary to make proper service of his motion but had only been told in response by Attorney Parkinson that "corporate is in

Indiana." He admitted that he remained somewhat confused about the structure of the various entities doing business as CNAC and with which the Debtor had done business.

The Court discussed with Attorney Pioletti that the full names of the entities who were prosecuting the collection activities in McLean County were on the documents he had attached to his motion. Both Marketview Motors and Marketview Finance were identified as plaintiffs in the case. The Court noted that, although just referring to the offending party by using the doing-business name of CNAC might not have been fatal to the cause, it would have been helpful if the full names of the parties had been included in the motion seeking sanctions. Additionally, the Court commented that, upon further review of the limited documents provided, it appeared that Attorney Parkinson and his clients were pursuing a citation to discover assets—a common collection remedy under Illinois law. The Court said that it could see no reason why they had not dismissed the citation. Dismissal of the pending citation would not have any adverse effect on the judgment obtained prepetition nor would such dismissal limit the ability of the creditors to pursue collection if the Debtor's bankruptcy was later dismissed. Attorney Pioletti agreed that he would file an amended motion more precisely identifying the parties and the activities of Marketview Motors and Marketview Finance that he claimed violated the automatic stay.

On October 15, 2020, the Debtor filed another motion seeking sanctions. Contrary to the discussions at the prior hearing and contrary to proper

procedures, the motion was not labeled as amended and was not linked on the docket to relate back to the original sanctions motion. The new motion named Marketview Motors and Marketview Finance as respondents. On October 19, 2020, the Debtor filed another motion seeking sanctions—this time labeled as amended but still not linked to either prior motion. This third motion ("Amended Motion for Sanctions") named Marketview Motors, Marketview Finance, and Byrider Corporate as respondents. Because Attorney Parkinson had appeared for both Marketview Motors and Marketview Finance, service of the Amended Motion for Sanctions was made on him. Service was made on Byrider Corporate by mail to the company's CEO. The Amended Motion for Sanctions was set for a telephonic hearing and notice of the hearing was served on Attorney Parkinson and the CEO of Byrider Corporate.

Before the hearing on the Amended Motion for Sanctions, Attorney Parkinson filed a motion to strike on behalf of Marketview Motors and Marketview Finance claiming that the matters raised by the Amended Motion for Sanctions were moot. He said that he had listened to the audio of the September 15, 2020, hearing and claimed that this Court said that it lacked jurisdiction because JD Byrider Corporate in Indiana had never been served.[2] He also claimed that this Court had said that it was appropriate for the Debtor to be required by the state court judge to appear for periodic status hearings in McLean County notwithstanding the pending bankruptcy. Attorney Parkinson claimed he had no control over the McLean County proceedings and repeated

---

[2] The Court uses the Courtspeak recording program that allows the posting of the audio of all hearings as PDFs on the docket.

the assertions made in prior filings that his clients simply reported credit information to another entity and therefore had no responsibility for the accuracy of the information transmitted to the credit bureaus. He argued that because, at least in his view, this Court had already ruled in his clients' favor on all issues, the Amended Motion for Sanctions raised issues that were moot and should be stricken.

At the subsequent telephonic hearing, Attorney Pioletti confirmed that the Amended Motion for Sanctions was the motion he was now prosecuting rather than either of the prior motions. The Court admonished Attorney Parkinson that much of what was contained in his motion to strike regarding comments he alleged had been made by the Court was inaccurate; the Court never said much of what Attorney Parkinson claimed he heard when he listened to the audio of the September 15 hearing. Attorney Pioletti reported that there had been no progress in obtaining compliance with the Court's prior orders. The pending matters of the Amended Motion for Sanctions and the motion to strike were set for an evidentiary hearing by video conference.

On November 9, 2020, Attorney Parkinson docketed a notice of filing with a copy of a state court order attached evidencing that the citation to discover assets had been dismissed and that the cause pending in state court had been continued generally. Prior to the evidentiary hearing, Attorney Pioletti docketed his trial exhibits in accordance with this Court's pretrial order and procedures. Attorney Parkinson did not docket any trial exhibits.

The evidentiary hearing began with the Court ruling on the pending motion to strike. The Court said that it had thoroughly reviewed the motion to strike and found that the motion should be denied. The motion to strike contained multiple, serious misstatements and mischaracterizations of the Court's prior rulings. The motion to strike also was based on the specious arguments that Attorney Parkinson was unable to report to the state court about the ongoing status of the Debtor's bankruptcy, if such reporting was required, and that, because the most serious of the stay violations had, at long last, been remedied, the issue of sanctions was moot. The Court found that the issues raised in the motion to strike did not support denial of the Amended Motion for Sanctions without an evidentiary hearing. The denial of the motion to strike was, however, without prejudice to Attorney Parkinson and his clients raising the same issues as defenses during the hearing.

The Debtor testified on his own behalf at the hearing. He said that he filed his bankruptcy on May 24, 2019, and listed a debt admittedly owed to CNAC. He first identified as an exhibit an order entered by the McLean County Circuit Court in the case being prosecuted against him by Marketview Motors and Marketview Finance. The order, dated July 8, 2019, required him to appear before the state court on August 28, 2019. The order, prepared by Attorney Parkinson, said that his failure to appear could result in a warrant being issued for his arrest. The Debtor said that he was confused and worried when he received the order; he believed that his bankruptcy had taken care of the matter.

A notice to appear issued by the McLean County Circuit Court on April 9, 2020, in the same case, was also identified by the Debtor. The notice to appear required his appearance on May 20, 2020, and stated that a warrant for his arrest would issue if he failed to appear. The Debtor said that he was quite concerned and very worried when he received the notice to appear. He said that he spoke with his attorney who assured him that he did not have to appear. Nevertheless, he remained very anxious about the situation.

With respect to the credit reporting issue, the Debtor identified several Experian credit reports he had obtained online. The information shown as reported by "CNAC/IL105" for September 30, 2019, January 31, 2020, and February 29, 2020, identified ongoing defaults of $499 per month for payments coming due in each of those months. The Debtor also identified a report from Credit Karma dated June 1, 2020, that showed "CNAC-IL105" continuing to report past due payments but identifying the most recent missed payment as $0. The Debtor testified that he watched his credit reports carefully and, each time CNAC reported an additional missed payment, his credit score was negatively impacted. He said that other creditors had reported his bankruptcy to the credit bureaus and had stopped reporting ongoing missed payments; only CNAC continued to report that payments were still coming due and were missed each month. He confirmed that, for a period of approximately four to six months prior to the hearing, CNAC had stopped reporting missed payments.

On cross-examination, Attorney Parkinson asked the Debtor repeatedly whether the notices requiring him to appear for state court hearings or face the

possibility of arrest were simply notices issued by the state court to monitor the progress of his case. The Debtor repeatedly said that he did not know why the notices were issued. Attorney Parkinson also had the Debtor confirm that he had never actually appeared in the state court case because his attorney had told him that he did not need to do so.

At the conclusion of the Debtor's testimony, his exhibits were admitted without objection. Attorney Parkinson called no witnesses and presented no exhibits. Other than Attorney Parkinson, no representative of Marketview Motors, Marketview Finance, or Byrider Corporate appeared at the hearing.

In closing arguments, Attorney Pioletti recited the long history of the stay violations, pointing out that no motion for sanctions had been filed for almost a year after the violations began. The Debtor filed his request for sanctions only after repeated attempts to obtain voluntary compliance with the stay from Attorney Parkinson and his clients were unsuccessful. Attorney Pioletti asked the Court to send a message that stay violations will not be tolerated and asked for an award of damages for the Debtor and for his attorney fees. When asked by the Court, he said that his hourly rate was $300.

Attorney Parkinson argued that Byrider from Indiana was not a party to the matter as it had not been properly served. He also asserted that the noticing from the state court was done at the insistence of the state court judge and not something for which he or his clients had any responsibility. He said that Attorney Pioletti should have submitted an itemization of his time in order to be awarded fees. In response to questioning from the Court, Attorney

Parkinson admitted that the order of July 8, 2019, requiring the Debtor to appear in state court, was entered in violation of the stay and that the order was void. He said that, notwithstanding that fact, he did not know enough about the status of the Debtor's bankruptcy to dismiss the collection action. He also acknowledged that he was aware of no authority supporting his position that, because his clients used software provided by a related company, the clients were absolved from the consequences of their misreporting of credit information about the Debtor.

The matter was taken under advisement and is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the estate and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (O); *Long Beach Acceptance Corp. v. City of Chicago (In re Madison)*, 249 B.R. 751, 756-57 (Bankr. N.D. Ill. 2000) (actions to enforce the automatic stay are core proceedings); *Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999). The issues before the Court arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be

constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

#### A. Threshold Issue: The Parties

A threshold issue of whether the Debtor named and served the proper parties with the Amended Motion has been raised, at least tangentially, by Marketview Motors and Marketview Finance. There has obviously been some confusion throughout the case about who were the proper respondents to the Debtor's several motions. Some of the confusion was caused by a lack of precision and attention to detail by Attorney Pioletti. Most of the confusion, however, was caused by what appeared to be intentional obfuscation by Attorney Parkinson. Accordingly, a brief discussion of who is who is needed here.

The Debtor understood that he owed money to CNAC and listed CNAC as a creditor on his schedules. Notice of the case filing was sent to CNAC at an address used by CNAC. A debtor filing bankruptcy has a duty to file with the petition "a list containing the name and address of each entity included or to be included" on the schedules. Fed. R. Bankr. P. 1007(a)(1); 11 U.S.C. §521(a)(1)(A). The purpose of requiring a list that includes complete names and correct addresses is to afford creditors and parties in interest their basic due process right to notice. *In re Glenwood Med. Group, Ltd.*, 211 B.R. 282, 285 (Bankr. N.D. Ill. 1997). In listing addresses, a debtor should make every effort

to provide reasonable notice to creditors. *Id.*; *see also In re O'Shaughnessy*, 252 B.R. 722, 734-35 (Bankr. N.D. Ill. 2000) (debtor bears the burden of attempting to ascertain correct addresses for creditors). Notice is reasonable if it is "calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

Notice to CNAC at its business address was proper. CNAC has held itself out as the Debtor's creditor by repeatedly—albeit in some instances incorrectly—reporting information about the Debtor's indebtedness to it to credit reporting agencies. CNAC has never claimed that it did not receive notice of the case filing. Neither Marketview Motors nor Marketview Finance has cited any authority that service of the case-filing notice to them by the use of one of their assumed names was improper or ineffective. In one of his filings, Attorney Parkinson asked: "Who is CNAC?" Based on his own representations to this Court and to the state court, CNAC is, without question, Marketview Finance and, most likely, is also Marketview Motors.

It cannot be disputed that both Marketview Motors and Marketview Finance received timely notice of the case filing and the resulting automatic stay. Just two months after the case was filed—well within the claims filing period—Attorney Parkinson filed a claim for the indebtedness the Debtor scheduled as owed to CNAC. The claim was filed only on behalf of Marketview Motors, which Attorney Parkinson said did business under the names of both

JD Byrider and CNAC. Nevertheless, both Marketview Motors and Marketview
Finance were being actively represented in collection activities by Attorney
Parkinson at the time, and his knowledge of the case filing is imputed to both
entities. *In re Herman*, 737 F.3d 449, 454 (7th Cir. 2013) (citations omitted).

Attorney Parkinson's representation in the claim that Marketview Motors
did business as CNAC conflicts with the designation of the Plaintiffs in the
state court action that shows that Marketview Motors did business as JD
Byrider and Marketview Finance did business as CNAC. But the discrepancy is
not fatal to the claim and, most likely, would never have been noticed but for
Attorney Parkinson's own questioning of Attorney Pioletti's lack of precision in
identifying his clients.

When Attorney Pioletti filed the initial motion for sanctions, he identified
the only respondent as CNAC. He did not clarify whether CNAC was a
corporation or some other type of entity. At the time, however, he knew that
Marketview Motors and Marketview Finance were the named plaintiffs in the
McLean County case; a copy of the order from the state court entered in July
2019 was attached to that initial motion. Thus, it was a misstep for the Debtor
and Attorney Pioletti to not more fully identify the respondents to the initial
motion.

The Amended Motion does specifically identify Marketview Motors and
Marketview Finance as respondents and also identifies the assumed names
used by each entity. Both before and after the filing of the Amended Motion,
Attorney Parkinson appeared for both entities and filed documents—the

Statement, the Further Statement, and the motion to strike—on behalf of both entities. In making such filings, he represented himself to be the attorney of record for both entities. Fed. R. Bankr. P. 9011. He appeared at the evidentiary hearing on behalf of both entities. Marketview Motors and Marketview Finance were properly served with the Amended Motion and subsequent notices of hearing and are fully within the jurisdiction of this Court. Attorney Parkinson makes no credible claim otherwise. His assertion that the Debtor's attorney has misled the Court about these entities is without merit.

The Debtor also named Byrider Corporate as a respondent in the Amended Motion and served an individual identified as its CEO with the Amended Motion and notice of hearing. The evidence presented, however, did not support any claim by the Debtor against Byrider Corporate. The Debtor did business with an entity he knew to be CNAC, credit reporting was done in the name of CNAC, and Marketview Motors and Marketview Finance sued the Debtor in state court. The Debtor presented no evidence whatsoever of ever having any contact with Byrider Corporate.

Attorney Parkinson is the only one who referred to Byrider Corporate—or some similarly named entity such as Byrider of Indiana—in connection with this case. He is the one who claimed that his clients were not responsible for credit reporting problems because they were using software that they apparently obtained from Byrider Corporate. He is the one who kept telling the Debtor's attorney to serve "corporate in Indiana" and led the Debtor's attorney to finally do just that despite the Debtor having no actual claim against the

entity. But Attorney Parkinson never explained the relationship between Byrider Corporate and his clients, and at the hearing he presented no evidence that Byrider Corporate was involved in the matters here. He admitted that he had no factual basis or legal authority to support his position that Byrider Corporate was somehow responsible for his clients' credit reporting errors. Byrider Corporate was named as a respondent to the motion and served through an agent, but no evidence was presented that Byrider Corporate had anything to do with the issues before the Court.

In summary, proper and effective notice of the case filing was sent to CNAC—Marketview Finance's assumed name used to do business with the Debtor. Marketview Motors and Marketview Finance clearly received timely notice of the case filing as evidenced by the claim filed by their attorney. Both Marketview Motors and Marketview Finance were also properly served with the Amended Motion now before the Court. Ample evidence of stay violations by these creditors was presented at the hearing and will be discussed below. Byrider Corporate was also properly served with the Amended Motion, but no evidence was presented of its involvement in the pending matters. Accordingly, Byrider Corporate's involvement in the matters will not be discussed further and the Amended Motion for Sanctions will be dismissed as to it.

### B. Violations of the Automatic Stay

The filing of a voluntary bankruptcy petition operates as an automatic stay. 11 U.S.C. §362(a). The automatic stay serves several purposes in

bankruptcy cases; debtors are protected from creditor collection activities, and the estate is preserved for the benefit of creditors. *LaHood v. Covey (In re LaHood)*, 437 B.R. 330, 337-38 (C.D. Ill. 2010) (citations omitted). The automatic stay is actually a "collection of stays" set forth in the subsections of §362(a). *In re Sayeh*, 445 B.R. 19, 26 (Bankr. D. Mass. 2011). At least three of those stays are at issue here.

Section 362(a)(1) stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor[.]" 11 U.S.C. §362(a)(1). Section 362(a)(2) stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case[.]" 11 U.S.C. §362(a)(2). Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]" 11 U.S.C. §362(a)(6).

An individual, such as the Debtor here, injured by a willful violation of the stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(k)(1). To determine whether a stay violation is willful, the injured party must establish that the violator had actual knowledge of the bankruptcy case and, notwithstanding that knowledge, acted deliberately. *Will v. Ford Motor Credit Company (In re Will)*, 303 B.R. 357, 363-64 (Bankr. N.D. Ill. 2003) (collecting cases); *In re Grason*, 2013 WL 3781766, at *6 (Bankr. C.D. Ill. July 18, 2013). To be clear, a debtor does not have to prove that a creditor

specifically intended to violate the stay in order to prove willfulness. *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009) (citing *Price v. U.S. (In re Price)*, 42 F.3d 1068 (7th Cir. 1994)). Proof that the creditor took "questionable action despite the awareness of a pending bankruptcy proceeding" is sufficient. *Id.*

When a creditor acts in violation of the stay but has no knowledge that the case is pending, the violation is considered to be technical or inadvertent. *Clayton v. King (In re Clayton)*, 235 B.R. 801, 807 (Bankr. M.D.N.C. 1998) (citations omitted). But a technical violation of the stay may become a willful violation if the creditor fails to remedy the violation when it learns of it. *Will*, 303 B.R. at 364. Creditors have an affirmative duty to remedy stay violations without unreasonable delay even if they had no knowledge of the pending bankruptcy when the violation occurred. *Id.* at 364-65.

It is also important to note that "[a]ctions taken in violation of an automatic stay ordinarily are void." *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001) (citing *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984)). This result occurs with respect to both technical and willful stay violations.

It is not disputed that Marketview Motors, Marketview Finance, and Attorney Parkinson had actual notice of the pendency of this case by no later than July 29, 2019, when the claim was filed by Attorney Parkinson. The only issue then, in determining whether sanctions should be imposed, is whether, by continuing their collection activities in the state court and by repeatedly misreporting information to the credit reporting agencies, they acted

deliberately in failing to fulfill their affirmative duty to remedy their stay violations after they had been directly informed of the violations and requested to remedy the violations.

### i. The McLean County Case

Limited information about the McLean County case was presented at the evidentiary hearing. Neither party presented the case docket or other information to put the July 2019 order and the April 2020 notice in context. It would have been helpful if the Debtor had spent a few minutes explaining his relationship to Marketview Motors and Marketview Finance, the obligation at issue, and the timeline of the action. Most of that could have come from simply introducing a copy of the state court case docket and having the Debtor testify about the debt at issue. Instead, the Debtor's presentation started with the July 2019 order requiring his appearance for a previous failure to appear, leaving the Court to try to piece together what had previously occurred in the state court case. Likewise, Marketview Motors and Marketview Finance presented no evidence about the pending litigation, suggesting that there was nothing in the record to support their defenses. The Court will not speculate about what occurred in the state court case before the bankruptcy was filed and has no duty to scour the record to try to figure it out. Nevertheless, a few bits of information about what occurred and when it occurred—key factors in determining whether stay violations occurred—can be gleaned from the evidence presented and the record here.

The claim filed by Marketview Motors says that it is based on a judgment obtained against the Debtor in the McLean County case on February 13, 2019. Attached to the July 2019 order entered into evidence at the hearing was a copy of the petition for rule to show cause filed by Attorney Parkinson on July 2, 2019. The petition for rule to show cause says that the Debtor was served with a citation to discover assets on May 7, 2019. The citation to discover assets required the Debtor to appear on June 26, 2019, which he apparently did not do. Thus, the petition for rule to show cause was filed, resulting in the entry of the order on July 8, 2019, requiring the Debtor to appear on August 28, 2019, or face possible arrest.

The dates of these events are important—prepetition conduct does not violate the stay while postpetition conduct does violate the stay. The judgment was obtained against the Debtor prepetition; Marketview Motors and Marketview Finance did not violate the stay in obtaining the judgment and had no duty to vacate the judgment. Of course, if the Debtor completes his plan and receives a discharge, the judgment will be void as a determination of the Debtor's personal liability. 11 U.S.C. §524(a)(1). But until that time, the judgment stands, and its mere existence—without more—does not violate the stay.

Although the date the citation to discover assets was issued does not appear in the record, Attorney Parkinson said in the petition for rule to show cause that the Debtor was served with the document on May 7, 2019. Because the document could not have been properly served until it was issued, the

issuance most certainly also occurred prepetition and did not violate the stay. The postpetition obligations of Marketview Motors and Marketview Finance with respect to the citation to discover assets are more nuanced, however, than their obligations with respect to the judgment discussed above.

Illinois law provides for Supplementary Proceedings for the collection of judgments; the method of commencing such proceedings is the issuance of a citation to discover assets ("Citation") by the clerk of court. 735 ILCS 5/2-1402; Ill. Sup. Ct. R. 277. A Citation may be issued to a judgment debtor or to a third party who holds property of a judgment debtor or has information that may aid in collection of a judgment. Ill. Sup. Ct. R. 277(a). A Citation compels the appearance of the judgment debtor or third party and may also require the production of books, records, and other documents. Ill. Sup. Ct. R. 277(c). Generally, a Citation includes a prohibition against the judgment debtor or third party from transferring any of the debtor's nonexempt property in their possession pending further court order. 735 ILCS 5/2-1402(f). This provision effectively creates a lien on such property in favor of the judgment creditor. Failure to comply with a Citation may result in a finding of contempt and the taxing of fees and costs. Ill. Sup. Ct. R. 277(h), (i).

Several Illinois bankruptcy courts have reviewed the issue of whether a judgment creditor must dismiss a Citation when a bankruptcy is filed and have concluded that merely leaving a Citation pending does not violate the automatic stay. *See, e.g., In re Kuzniewski*, 508 B.R. 678, 687 (Bankr. N.D. Ill. 2014); *In re Tires N Tracks, Inc.*, 498 B.R. 201, 205 (Bankr. N.D. Ill. 2013). But

a Citation proceeding is, without question, stayed by a bankruptcy filing, and, to avoid violating the stay, no "obligations, deadlines or need to respond" should be imposed on the debtor. *Kuzniewski*, 508 B.R. at 687. One reason a creditor might not be required to dismiss a Citation when a bankruptcy is filed is that such dismissal could constitute a release of any lien created by the Citation on a debtor's nonexempt property. *Tires N Tracks*, 498 B.R. at 205-06. Immediate release of a lien properly obtained prepetition is not generally required in order to comply with the mandates of the automatic stay. *Id.*

Here, although the Citation was issued before the bankruptcy was filed, Marketview Motors and Marketview Finance did not just leave their Citation pending. Instead, they actively engaged in further collection activities by filing a petition for rule to show cause on July 2, 2019, and obtaining an order to show cause on July 8, 2019. Both actions clearly violated the stay in effect when the actions were taken, and, as Attorney Parkinson admitted at the evidentiary hearing, the order to show cause requiring the Debtor to appear or face possible arrest was void. *See Middle Tenn. News*, 250 F.3d at 1082. Further, these creditors continued to prosecute the matter under circumstances whereby another notice compelling the Debtor to appear in court or face arrest was issued on April 9, 2020. And even then, despite multiple requests from the Debtor and his attorney to respect the stay, they doubled down, refusing to dismiss the void order to show cause and insisting on enforcing the void order requiring the Debtor to appear or face an arrest warrant.

After violating the stay and having that violation specifically brought to their attention by the Debtor's attorney, Marketview Motors and Marketview Finance had an affirmative duty to remedy the violation. *Will*, 303 B.R. at 364. Giving them the benefit of the doubt that their attorney might not have been aware of the bankruptcy filing when the order to show cause was obtained, these creditors nevertheless had a duty to dismiss the order to show cause when they learned of the bankruptcy. And because they failed to do so, what they now claim was initially a technical violation of the stay became a willful violation. *Id.*; *see also Copeland v. Kandi (In re Copeland)*, 441 B.R. 352, 360 (Bankr. W.D. Wash. 2010) (failure to take reasonable steps to remedy a stay violation is in itself a stay violation). Attorney Parkinson knew of the pending bankruptcy no later than July 29, 2019, when he filed the claim in this case for his clients. His resistance on their behalf to dismiss the void order until November 2020 and only after the Debtor filed a motion for sanctions is indefensible and clearly supports a finding that Marketview Motors and Marketview Finance willfully violated the stay. Importantly, even if the order to show cause—a civil contempt action under Illinois law—had been obtained before the bankruptcy was filed, enforcement of the order still would have been stayed and continued enforcement would have violated the stay. *In re Erhardt*, 618 B.R. 832, 841 (N.D. Ill. 2020); *In re Benalcazar*, 283 B.R. 514, 518-19, 529-30 (Bankr. N.D. Ill. 2002).

Attorney Parkinson's suggestion that once the order to show cause had issued, he lost control of the state court case, the state court judge took over

control, and further enforcement of the order compelling the Debtor's appearance did not violate the stay is without evidentiary or legal support. Marketview Motors and Marketview Finance presented no evidence that the state court judge was ever told of the bankruptcy or, even if the judge was told, that the judge was informed that the order to show cause issued in July 2019 was void as having been entered in violation of the stay. Likewise, neither creditor presented any evidence that the state court judge actually decided, as Attorney Parkinson claimed in closing arguments, that the Debtor here would not succeed in his bankruptcy case and therefore the state court could ignore the stay and continue enforcement and collection proceedings. It is just not credible that a state court judge, properly informed about this case, would have made such a decision. Absent any evidence about the actions of the state court judge, this Court just simply does not believe Attorney Parkinson's assertion that the state court judge impeded efforts by Marketview Motors and Marketview Finance to comply with their affirmative duty to stop enforcement and collection activities after this case was filed. As far as this Court can tell from the limited record, neither creditor made any effort to fulfill their duty to remedy their stay violations, and the suggestion now that they were impeded in such nonexistent efforts is not credible.

Likewise, Attorney Parkinson's suggestion that he and his clients are blameless for the April 2020 notice to appear because it was actually prepared and sent by the state court is without merit. The notice was issued to enforce the void order to show cause that Attorney Parkinson prepared in violation of

the stay. The notice would never have issued if Attorney Parkinson had promptly dismissed the order to show cause when he learned of the bankruptcy. Further, the issuance of such a notice by the state court suggests that the state court was not fully informed about the case pending here and the ongoing existence of the stay. Marketview Motors and Marketview Finance had a duty to inform the state court that ongoing collection actions were stayed and their failure to do so, most certainly, resulted in the issuance of the April 2020 notice. Attorney Parkinson's continued refusal to dismiss the order to show cause after he learned of the April 2020 notice undercuts his argument now that he had no responsibility for that notice.

In response to a question from the Court during closing arguments, Attorney Parkinson claimed that he did not promptly dismiss the order to show cause because he did not know enough about the case to do so. But he did not explain what information he was lacking in deciding how to proceed. By July 29, 2019, he knew that a bankruptcy had been filed in May, and he therefore knew that his filing of the petition for rule to show cause and obtaining the order to show cause violated the stay. He has admitted that the order to show cause was void. By September 2019, he knew that the Debtor's Second Amended Chapter 13 plan had been confirmed. And at all times thereafter, he knew that the case was still pending and that the automatic stay remained in full force and effect. He also knew that his clients did not claim to have obtained a lien on any nonexempt property of the Debtor by the service of the Citation, and dismissal of the Citation would therefore not disadvantage them

in that regard. In the absence of any explanation of what else he needed to know in order to understand that the continuing enforcement of the order to show cause violated the stay, the Court can give no credence to his claim that he lacked sufficient knowledge to act properly or advise his clients correctly.

Importantly, after Attorney Parkinson finally appeared for a status hearing and heard the Court express concern about his conduct, he was able to immediately obtain dismissal of the Citation and related order to show cause. The copy of the state court order docketed November 9, 2020, shows that it was entered instanter and without notice. Apparently, all Attorney Parkinson needed to do was submit a motion to the state court asking for the dismissal and the order of dismissal was entered. The existence of such a quick and easy state court process to dismiss the Citation and the void order to show cause further undercuts Attorney Parkinson's argument that the state court judge was holding onto the case and limiting his ability to remedy the stay violations.

The conduct of Marketview Motors and Marketview Finance violated the automatic stay in multiple ways. These creditors continued a collection action and issued process in the form of the order to show cause after this case was filed. The conduct was intended to enforce their prepetition claim and prepetition judgment against the Debtor notwithstanding his bankruptcy filing. Their violations were called to their attention multiple times over more than a year with no action being taken by them to remedy the violations. To the contrary, through Attorney Parkinson, the creditors affirmatively refused to

remedy their stay violations. This is not a close call—Marketview Motors and Marketview Finance willfully violated the automatic stay, and they must be sanctioned. Specific sanctions will be discussed below.

### ii Credit Reporting Issues

Limited information about the alleged violations of the stay by Marketview Motors and Marketview Finance related to credit reporting was presented at the evidentiary hearing. The Debtor introduced several credit reporting documents but explained only generally that the information reported was inaccurate. He claimed that his credit had been negatively impacted by the inaccurate reports. Marketview Motors and Marketview Finance presented no evidence that the reported information was accurate or that there was any legitimate basis for making the reports. The only defense raised was made in arguments by Attorney Parkinson and consisted of blaming an allegedly related corporate entity for providing the software used for the credit reporting. Neither attorney cited any case law related to the issue of whether, and under what circumstances, postpetition credit reporting may violate the automatic stay.

Generally, "postpetition credit reporting of overdue or delinquent payments, without more, does not violate the automatic stay[.]" *Keller v. New Penn Financial, LLC (In re Keller)*, 568 B.R. 118, 122 (B.A.P. 9th Cir. 2017). Fair and accurate reporting is required by the Fair Credit Reporting Act. 11 U.S.C. §1681(a). Reporting of accurate information after a bankruptcy filing, such as the timeliness of postpetition mortgage payments required to be made as part

of a confirmed plan, does not violate the stay. *In re Juliao*, 2011 WL 6812542, at *4 (Bankr. E.D. Mich. Nov. 29, 2011). This is true, however, only if such reporting is not made to coerce payments or harass a debtor. *Id.* at *6. When the credit reporting is made in an attempt to collect a debt or harass a debtor, a stay violation may well exist. *Weinhoeft v. Union Planters Bank, N.A. (In re Weinhoeft)*, 2000 WL 33963628, at *2 (Bankr. C.D. Ill. Aug. 1, 2000) (Lessen, J.) (citing *Singley v. Am. Gen. Finance (In re Singley)*, 233 B.R. 170, 173 (Bankr. S.D. Ga. 1999)).

Here, an initial inquiry must be made into whether the reporting made by Marketview Motors and Marketview Finance was accurate; it is clear that their reporting was not accurate. Under Illinois law, once the judgment was taken by these creditors against the Debtor in February 2019, the original note was merged into the judgment and the specific terms of the note lost their enforceability. *Rock Island Bank & Trust Co. v. Stauduhar*, 59 Ill. App. 3d 892, 900, 375 N.E. 2d 1383, 1389 (1978) (relying on *Doerr v. Schmitt*, 375 Ill. 470, 31 N.E. 2d 971 (1941), and *Peoria Savings, Loan & Trust Co. v. Elder*, 165 Ill. 55, 45 N.E. 1083 (1897)). Thus, the specific terms of the Debtor's obligation to Marketview Motors and Marketview Finance, such as the amount of the monthly payment due, were no longer enforceable, and reporting missed payments as though the original note was still in full force and effect was inaccurate. The creditors have never alleged otherwise and presented no evidence or argument to the contrary.

Having concluded that Marketview Motors and Marketview Finance repeatedly reported inaccurate information regarding the Debtor to credit reporting agencies, it follows that the reporting was done to harass the Debtor. If there was any other explanation for the inaccurate reporting, the creditors could have and should have presented it at the evidentiary hearing. Further, at the same time that the inaccurate reporting was being made, Marketview Motors and Marketview Finance were intentionally violating the stay by continuing to pursue collection against the Debtor in state court and by refusing to dismiss the void order to show cause. The automatic stay prevents "any act to collect" a prepetition claim from a debtor. 11 U.S.C. §362(a)(6). The acts prohibited by the stay most certainly include making adverse and inaccurate reports to credit bureaus. *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991). In fact, the credit reporting activities of Marketview Motors and Marketview Finance in this case are "just the type of creditor shenanigans intended to be prohibited by the automatic stay." *Id.* (citations omitted).

This Court has no idea why Attorney Parkinson and his clients acted as they did. Their conduct seems short-sighted as it was unlikely to produce any real return. But the conduct served the purpose of making the Debtor anxious and stressed and causing his credit score to drop. Thus, the conduct appears to have been undertaken for the express purpose of harassment. The conduct violated the stay and is sanctionable. Specific sanctions will be discussed below.

*C. Sanctions*

As set forth above, sanctions for violation of the stay may include actual damages, punitive damages, and fees and costs. 11 U.S.C. §362(k). Here, because of the egregious and repeated stay violations by Marketview Motors and Marketview Finance, all three types of sanctions will be awarded.

The Debtor testified that receiving the repeated notices to appear in state court under penalty of arrest caused him great stress and anxiety. He also said that he was closely monitoring his credit and that, each time CNAC reported a missed monthly payment, his credit score was negatively impacted. These damages are actual but difficult to quantify, and the Debtor made no effort to place a number on the amount of damage he suffered. Nevertheless, this Court has authority to fashion a remedy when "necessary and appropriate" to enforce the Bankruptcy Code. 11 U.S.C. §105(a). Nominal damages may be awarded to compensate for the infringement of statutory rights, including stay violations, even in the absence of proof of specifically quantified damages. *See In re Musto*, 2021 WL 99343, at *4 (Bankr. M.D. Fla. Jan. 6, 2021) (nominal damages awarded for violation of discharge injunction when debtor failed to provide proof of actual damages due to emotional distress).

This Court will exercise its inherent and statutory authority to award nominal damages to the Debtor to compensate him for the repeated stay violations by Marketview Motors and Marketview Finance. For their failure to dismiss the order to show cause entered in July 2019 after learning of the bankruptcy, $250 will be awarded. For their failure to dismiss the order to

show cause after the April 2020 notice issued and both creditors were requested to remedy the situation but, through Attorney Parkinson, affirmatively refused to act, an additional $250 will be awarded. And for making each of the three credit reports that claimed that a $499 monthly payment had been missed, $100 will be awarded, resulting in an award of $300 for the credit reporting violations. Thus, a total of $800 will be awarded as actual damages.

Punitive damages are intended to punish wrongful action that was intentional or malicious and to deter the wrongdoer and others from similar conduct. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67 (1981). Punitive damages are appropriate here because the conduct of Marketview Motors and Marketview Finance was intentional and egregious. Despite actual knowledge of the Debtor's bankruptcy, these creditors obtained an order to show cause compelling him to appear in state court under penalty of arrest and, despite repeated demands, refused to take any action to remedy the situation until more than a year after their first violation. They repeatedly made inaccurate reports about the Debtor to credit reporting agencies, and they raised spurious defenses and attempted to obfuscate their involvement in the wrongful conduct by questioning the use of their own assumed name and blaming a related corporation for their wrongdoing. These creditors refused to act until the Debtor filed multiple motions and the matter was set for evidentiary hearing. But at the evidentiary hearing, they then presented no

witnesses, no evidence, and no meaningful arguments in their defense. This is exactly the type of conduct that requires an award of punitive damages.

Punitive damages should be awarded in an amount "sufficient to insure that it will punish and deter." *Sansone v. Walsworth (In re Sansone)*, 99 B.R. 981, 989 (Bankr. C.D. Cal. 1989) (internal quotation marks omitted) (citations omitted). To that end, a punitive damage award should "sting the pocketbook of the wrongdoer." *Id.* A variety of factors may be considered in determining the amount of punitive damages to be awarded, including the level of sophistication of the wrongdoer. *Baggs v. McClain Ford-Mercury, Inc. (In re Baggs)*, 283 B.R. 726, 729 (Bankr. C.D. Ill. 2002) (Perkins, J.) (citations omitted).

Both Marketview Motors and Marketview Finance are, without question, creditors of sufficient sophistication to have known that their conduct was wrongful. They do significant business in Central Illinois and are regular participants in bankruptcy cases.[3] Nothing about their obligations as it relates to the automatic stay or credit reporting should have been news to them. Likewise, Attorney Parkinson is a regular practitioner in the Central District bankruptcy courts.[4] The Court does not doubt for a second that he was fully aware of his clients' obligations once this case was filed. Why these creditors and their attorney acted as they did is unknown. But it is known that future

---

[3] A search of the Court's electronic case filing ("ECF") system shows that combined, Marketview Motors and Marketview Finance have been listed as creditors in bankruptcy cases or named as parties in adversary proceedings in the Central District of Illinois over 400 times since 2004.

[4] A search of the ECF system discloses that Attorney Parkinson has entered his appearance for a party in a bankruptcy case or adversary proceeding in the Central District of Illinois over 350 times since 2004.

similar conduct must be deterred. Punitive damages in the amount of $1000 will be awarded.

Finally, attorney fees may be awarded for the stay violations here. The Debtor testified that he repeatedly called Attorney Pioletti, and it is undisputed that Attorney Pioletti repeatedly contacted Attorney Parkinson. It was only after the several motions were filed that Marketview Motors and Marketview Finance responded in any meaningful way to begin remedying the stay violations and only when the matter was set for evidentiary hearing that they finally dismissed the Citation and order to show cause in the state court. Clearly, without Attorney Pioletti's assistance, the stay violations would have continued and the Debtor might, in fact, have been arrested. Under such circumstances, an award of fees is not just allowed but may actually be mandatory. *In re Int'l Forex of California, Inc.*, 247 B.R. 284, 291 (Bankr. S.D. Cal. 2000).

The Debtor certainly incurred fees and Attorney Pioletti definitely put in significant time in trying to get Marketview Motors and Marketview Finance to respect the automatic stay. Unfortunately, Attorney Pioletti did not present evidence as to the time he expended or his hourly rate. Only when the Court questioned him during arguments did he say that he charges $300 per hour. This lack of evidence was obviously a misstep on the part of Attorney Pioletti. Although it will not defeat his claim for fees entirely, it does preclude the Court from awarding the full amount requested.

As discussed with the issue of nominal damages, this Court has authority to fashion a remedy to enforce its orders and the provisions of the

Bankruptcy Code. 11 U.S.C. §105(a). Enforcement of the automatic stay is critical to the bankruptcy process, and, as clearly shown here, debtors often need the assistance of counsel to protect their rights. Creditors who violate the stay and then double down by refusing to remedy their violations cannot complain about the costs incurred by a debtor to enforce the stay and make the creditor do what should have been done in the first place. The Court will award such reasonable fees to Attorney Pioletti as can be justified by a review of the record despite his failure to file an itemized affidavit.

In the Court's recent anecdotal experience, $250 per hour is the rate commonly charged by consumer lawyers in the Central District of Illinois. Because Attorney Pioletti filed no affidavit and said his rate was higher only after questioning by the Court, he will be allowed only $250 per hour. A review of the record suggests that at least five hours of time was expended by Attorney Pioletti in representing the Debtor to enforce the stay. The five hours are calculated by allowing one hour each for the following: (1) multiple calls and emails with the Debtor and with Attorney Parkinson regarding the stay violations; (2) preparation of the several motions for sanctions; (3) multiple telephonic hearings on the motions; (4) preparation of exhibits and the Debtor to testify at the evidentiary hearing; and (5) participation in the evidentiary hearing. All of this work appears of record and the time awarded is modest and, almost certainly, less than what was actually expended. A total of $1250 will be awarded as a sanction against Marketview Motors and Marketview Finance for fees incurred by Attorney Pioletti.

In an order entered August 20, 2020, this Court awarded the Debtor $1000 in damages and $750 for attorney fees as sanctions for the conduct of Marketview Motors and Marketview Finance. The award here of $800 in actual damages, $1000 in punitive damages, and $1250 in fees, will amend and replace the prior award.

### IV. Conclusion

The award of sanctions here is necessary. Attorney Parkinson and his clients violated the automatic stay in multiple ways. They actively prosecuted the collection action in state court after learning of the bankruptcy filing, and they repeatedly reported incorrect information about the Debtor to credit reporting agencies. They provided no defense or justification for their conduct at the evidentiary hearing; no representative other than Attorney Parkinson even appeared for Marketview Motors or Marketview Finance at the hearing. Although the sanctions here are nominal, they should send a message to both creditors and their attorney that their conduct here was wrongful and highly inappropriate; similar conduct will not be tolerated in the future.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ###